Good morning, your honors. Michael Drake for Raymond Mendez. I'd like to try to reserve a couple of minutes, two minutes, if I may. I was just on YouTube, Judge Watford, can you hear me okay? I can, yes, thank you. Okay. I was just on YouTube the other day watching the argument in the Rodriguez case, and Judge Friedland and Judge Berzon's questions there really kind of crystallized for me what's at stake in these cases about 3582C2 eligibility, which is the basic unfairness of holding someone responsible for sentencing decisions that at the time just didn't matter. And I think that theme kind of runs through both questions here about the drug quantity and about the career offender issue. When Ray Mendez was opposed to 139 kilograms, both of those numbers got him to the same sentencing range, the guideline range, and that range was mandatory at the time. It just didn't matter. Likewise, it didn't matter whether the district judge, whether the sentencing judge thought he would qualify as a career offender. Again, whether he was a career offender or not got him to the same sentencing range. And what Rodriguez reflects is that in deference to the fairness needed in these circumstances, federal courts have to be exceptionally scrupulous about what the sentencing judge actually did at the defendant's sentencing hearing. So in the drug quantity context, it's implemented that concern, that extra degree of care by requiring that any drug quantity finding the sentencing judge supposedly made has to be made express and specific or explicit and specific. That's the language in Rodriguez. And likewise, by the same token, if there's any kind of ruling about the career offender guideline, the court has looked, has taken a functional approach and looked to whether the sentencing court sentenced the defendant as a career offender, as the court put it in Wesson, or treated him as a career offender, as the court put it in Waters, or sentenced him under the guideline or based on the career offender guideline, as the court has put it in other cases that haven't been briefed. And the bottom line here is that at Mendez's sentencing, there was no clear, there was no explicit or specific drug quantity finding, and the court did not The government wants to rely at least in part on what the court said earlier in, I guess, the same sentencing hearing for a codependent. I can't say I've read the entirety of the transcript, but they reference an earlier portion in which the judge did seem to credit the government's evidence on drug quantity didn't just blindly accept whatever findings were stated in the PSR, you know, I guess, heard testimony right from, from witnesses in support of the drug quantity and seem to credit the 139 kilogram figure for that, that earlier codependent. And then when it came to your client sentencing, seem to say, you know, I haven't heard anything that that indicates that I should take a different approach. So why? Why isn't that even though I grant you the judge never said in the context of your client sentencing 139 kilograms, why isn't the government right that that that really was enough of an indication that the judge had, in fact, focused on the issue, made a specific finding, rather than as in Rodriguez just blindly adopted what the PSR said. I guess there's three things I would say to that, Your Honor. One is that under Rule 32, I think the express and explicit findings have to be made at the defendant's own sentencing hearing. So if it, if it mattered to the judge, the sentencing judge, that he was adopting the precise quantity or a specific quantity, he had to say so under Rule 32. Second, and sort of relatedly, under Rodriguez now, under the Rodriguez rule, you have to look and see whether he made an express and specific drug quantity finding at Mendez's sentencing. And at Mendez's sentencing, all that he said was that he was resolving the dispute because there was enough evidence, there was enough evidence that the government had provided to support the offense level. There's no other drug quantity even mentioned in the PSR, in the addendum, or at the sentencing hearing. So it's, it's hard to see how, how even if, I mean, I would grant that, granting that there was a, that amounted to a specific finding at another defendant's sentencing, you have to look at Mendez's own. And maybe one other reason you have to look at Mendez's own, I guess is the third point, is that there was a separate argument about, about foreseeability that the judge allowed was a, a, a stronger argument for Mendez and made a comment about, you know, how Mendez was, so the PSR had held that Mendez only knew about the conspiracy, the, the activities of the conspiracy clearly 11, some 11 months into that 17-month period. Sorry about the numbers, but I'm not sure how else to address it. So the PSR put the relevant period of the conspiracy at 17 months, and it said that Mendez had knowledge of the conspiracy only 11 months in. And the judge at the sentencing hearing said, sorry, yes, at the sentencing hearing, Mendez's sentencing hearing, said, well, your participation was more than that. So there was no, 139 couldn't have been made specifically as to Mendez because there was some unknown amount of time that the judge had said he was, less than the total period of the conspiracy that Mendez was responsible for the enterprise's activities. So, Mr. Drake, in the matter of the, the drug quantity as to, Mendez was convicted of conspiracy, correct? Yes, that's right. So can the drug quantity be calculated differently for different co-conspirators? Well, the conspirators are only responsible for, for distribution within the scope of their agreement. And if Mendez was only knowledge, had knowledge of the conspiracy from that date forward, it could only be from that date forward. So your point is then that there would be a separate calculation in terms of foreseeability as to each one of the conspirators. Right. And it would have to be, under Rodriguez, that would have to be specific for there to be a binding finding here. But I would, I would really stand on the point that there was no specific drug quantity finding made at Mendez's hearing at all, even setting that aside. And I, if I, if I may, unless you have further questions about the drug quantity, I just want to explain how this ties in with the career offender issue, right? 1B1.10 targets, the limitation of 1B1, I'm sorry, 1B1.10 targets guideline application decisions. Not just decisions, not sentencing decisions, not all decisions made at sentencing, but guideline application decisions. And I think Waters, the language in Waters makes a clear lesson, too, that the guideline application decision isn't some decision about the career offender guideline, but it is the decision to sentence the defendant as a career offender, or treat him as a career offender. And here, there was no effect on the sentence, so that condition isn't met. Yes, one, one other question on the drug quantity issue. Obviously, our, our court in a prior decision did read this same record as indicating that the judge had made a 139-kilogram finding. Even if we grant you that maybe, strictly speaking, law of the, the law of the case doctrine doesn't govern here, it would seem to me we'd have to have a pretty compelling reason to, to essentially reach a different factual conclusion as to what the record reveals about the nature of whatever finding was made. I guess I, that seems to me one point. And then, of course, the district judge here himself basically said that, that, that is in fact what I did. It's not like the Ninth Circuit misread the record. I, I did view myself as having made this 139-kilogram finding. So maybe you can just speak to that, that secondary point as well. Well, I don't think that what the district court said that it did at the sentencing overrides what it actually did as revealed by the record. And I, I know that if the, if the district court in, in some sense was relying on this court's decision in the screening panel decision, if the screening panel decision was wrong, that might reflect a, a kind of an inappropriate reliance on that. Does that, does that answer your question, Your Honor? No, not really. I, I guess what I'm saying is that we're looking at the exact same record that it's, and I don't think it was the screening panel. I think it was the merits panel back in 2010, if I'm, if I'm remembering right, that looked at this exact same record and concluded that the judge had in fact made a specific finding as to 139 kilograms. So all I'm saying is that, sure, Rodriguez came down in the interim, but that doesn't, all we're trying to figure out is as a factual matter, what did the judge do at the sentencing? And that, Rodriguez doesn't affect that. So you're asking us to basically come in and just disagree with those three earlier judges and say, well, they didn't know what the hell they were talking about. We've looked at the same record and there was no finding. I'm just saying that's kind of an awkward thing to ask us to do, putting, putting the sidebar of the case down. I, I, I'm sorry to ask you to do anything awkward, Your Honor. One, I, maybe one thing that will make it less awkward is the fact that we're here today suggests that the administrative decision to screen the case in the first place was wrong. And I think that informs the court's exercise of its discretion on, in terms of both the, the exceptions to the law of the case that I've talked about. The fact that it, that a fairly complicated case with unsettled law at the time means that the case should undermine the court's confidence in the case, in the outcome. And it also means that the clarification that the court provided in Rodriguez would have, would, might have made a difference to that panel had they had the benefit of that case. I see I've run out of time, Your Honor. I'll give you some time for it. Thank you. Good morning, Your Honors. Julia Hu, Embattled United States. I'd like to start with the career offender issue. This court's decision in Waters decides this case. There, the court held that in a 3582C2 proceeding, a district court may apply the offense level dictated by the career offender guideline, even if the district court did not apply the career offender offense level at the defendant's original sentencing, so long as the court determined at the original sentencing that the defendant was a career offender. That's exactly the scenario that applies here. The sentencing court determined after argument and briefing from both parties on the issue that Defendant Mendez was a career offender. He didn't say was. He said would. He said, Your Honor, I reviewed your records and I will say that the career offender status would apply. Would. Correct. And the reason, and the determination that. You didn't say it did apply. It, the offense level from the career offender guideline did not apply. That's different. Yes, Your Honor. But by operation, that was merely by operation of the career offender guideline itself. You know, what struck me about that issue was that in the defendant's sentencing memo, they disputed whether one of the, one of the off prior offenses was actually an aggravated felony for purposes of the career offender. And that was never, I didn't see any ruling by the judge that he even considered that. Your Honor, at ER 116, the court said, I reviewed your records and I will say that the career offender status would apply. And. Well. By operation of the career offender guideline itself, it dictated that because the drug quantity offense level of 38 was higher than the career offender guideline of 30, offense level of 37, that the career offender, by operation of the career offender. The judge, I think as I recall from reading the record, that the judge also said that it was moot. Was that, was this where he said it was moot? Yes, Your Honor. But moot in the sense that under the way that the career offender guideline works, if the offense level from the drug quantity guideline is higher, that offense level should apply. Didn't he say then it was unnecessary to decide essentially at that stage, isn't that correct? No. I didn't specifically say it, but he said it was mooted, meaning it was unnecessary to decide because it wouldn't affect the sentencing range anyway at the time. Isn't that essentially what's in the record? I would say that the offense level from the career offender guideline did not apply because, the 37 did not apply because the 38 applied. But had he made a different determination of drug quantity, then the career offender would have controlled. So really the question and the approach dictated by Waters and by the guidelines policy statement is that we're supposed to place ourselves back at the original sentencing, substituting only the retroactive amendment, which is the drug quantity guideline. So if we are to do that, even assuming for the sake of argument that there's some change to the offense level from the drug quantity guideline, then the career offender guideline would provide that the offense level is 37, the criminal history category is 6, the guidelines range is still 360 months to life, and so there's been no change in the sentencing range such that Defendant Mendez is eligible for a sentencing reduction. There's nothing in the record to suggest that that's not what would happen if we went back to 1997, and that's essentially what the guidelines and the statute require that the district court do, and that was the same scenario in Waters itself. Ms. Hsu, do you agree, is Mr. Drake correct in response to my question that in terms of the conviction here being for conspiracy, that there has to be an individual foreseeability analysis as to each one of the conspirators? Yes, Your Honor, but the district court... There can be a different drug quantity under consideration for the individual conspirators, correct? Yes, Your Honor. However, the district court did make a specific foreseeability finding as to Defendant Mendez at his original sentencing. The time period on the table in terms of both the PSR and the government's declarations was 18 months. Defendant Mendez made an argument at his own sentencing that he should only be held liable for seven months. The district court rejected that argument, and it said that based on his presence at the videotaped meetings that were part of the trial evidence, as well as his personal participation in a drug negotiation with traffickers in Mexico, that the entire time period was foreseeable to Defendant Mendez. And so he held him accountable for the entire 139 kilograms. That's at... That's at ER 116, Your Honor. I still... The strongest argument that each defendant may have in that regard is the foreseeability element. And in your case, there's argument by your counsel that the participation began around September 1994. I still nevertheless find that the participation in the enterprise was more extensive than that, and it does warrant my finding of foreseeability on your part, therefore justifying the calculations that have been proposed by the probation officer, giving the total offense level to be that of 38. So what does that mean? When did he... When was the judge finding that he began his participation? So the time period proposed in the government declarations and the PSR was in 1993 through 1995 for a total of 18 months. The defendant made an argument at sentencing that it was only... His participation only began in September of 1994, and the district court rejected that argument expressly on the record and basically held that the entire 18 months was foreseeable to Defendant Mendez. So that's what you... You read this as that he was adopting the government's position about... Yes, Your Honor. Yes, Your Honor. And to Judge Watford's point earlier, essentially, the government's declarations very clearly set forth that the estimate was 139 kilograms. That's undisputed. At the prior sentencing, the court held expressly the daily uses of crack to be such as has been stated in the declarations, and I accept those declarations, and therefore, my calculations would incorporate the 38 point. That's at SCR 244. At Defendant Mendez's own sentencing, his counsel expressly adopted the cross-examination from Defendant Shryock's sentencing, and the court expressly advised Defendant Mendez himself. That's at SCR 274. Quote, I will advise you that the request made by your attorney is to adopt the examination by Mr. Littman for Defendant Shryock and Defendant Thurian through Mr. Boren on the cross-examination of the declarations and the declarants of Officer Hans Baymar, Sonny Garcia, Elpano Ruiz Jr. that have been submitted to the court on behalf of the government's as to the Racketeering Act 21 calculations of the drugs. So it was very clear from this record. The defendant was personally advised. He confirmed that he had confirmed with counsel and waived his own presence at that prior hearing, and all the defense counsel's arguments at the sentencing presume that the debate is whether the court could adopt the 139-kilogram estimate set forth in the references to the declarations throughout the counsel's arguments and the approach, the formula that was used, the number of months that were used. So it's very clear that Defendant Mendez was aware at his own sentencing that the 139-kilogram quantity was on the table. And it was also clear from the record that the question... Why didn't you just ask the judge to make a finding? Judge, would you find that he was responsible for 139 kilograms of... So I believe the government's sentencing position paper, which was supplemented by those declarations, was a request for the judge to make the 139-kilogram finding put forth in those declarations. That was the proposed estimate. He didn't do it explicitly. Your Honor, the government's... In the record where he said, I find that the defendant is responsible for 139 kilograms of cocaine base. The portion that I just read to you is that the daily uses of crack, to be such, has been stated in the declarations, and I accept those declarations. That's an adoption... Based on the three police officers' declarations, in terms of the estimate, correct? Yes, and... Which is the law of the case that was also applied as to the co-defendants, correct? That's correct. Okay, right. Yes, so that was the 139-kilogram quantity. There was no alternative quantity proposed by the defendant. The defendant's position in his sentencing was that there was no specific amount that could be discernible from the declarations, and therefore, the lowest base offense level of 12 should apply. But the court clearly rejected that position and made a specific quantity finding of 139 kilograms. And to Judge Wofford's point, nothing in itself has affirmed three times, and this court affirms in the first Mendez case. It held that the district court appropriately found in its sentencing that the defendant was responsible for 139 kilograms. That was the 2010 finding, and then that was adhered to by the screening panel in the second Mendez summary affirmance decision. And there's nothing in Rodriguez that changes that reading of the record or how to read the record. Finally, I just want to touch on the 3553A explanation by the district courts. That's an alternative basis that this court could affirm the district court's exercise of discretion that even if Mendez was eligible for a sentence reduction, it would not... That the nature of the defendant's convictions and the 3553A factors also weigh against the sentence reduction. The United States versus Wilson case, the government recently submitted a 28-J letter on that case. That's 8F4 970. The explanation in that case was materially identical to the explanation that was provided by the district court in this case. There, the Ninth Circuit upheld the sufficiency of the explanation that the court, having considered the factors set forth in 3553 and inter alia, the nature of the defendant's crimes, declines to exercise its discretion to re-sentence him. Here, we have a district court that had sat through an eight-month jury trial. Defendant Mendez's own sentencing and three prior 3582C2 motions, including a hearing on the first motion. The district court was well familiar with defendant Mendez's crimes and arguments. The district court provided an intuitive reason for a denial of the motion, which was the nature of defendant's convictions, which included RICO, RICO conspiracy, narcotics trafficking, and conspiracy to commit murder, all arising from his involvement with Mexican mafia. And so the court could affirm on that alternative ground. Okay. Thank you. Thank you. Your Honor, just briefly on drug quantity. I'll put two minutes on the clock for you. Oh, thank you, Your Honor. I don't think I'll need them, but if you have questions, we can continue. I just want to say, this case is the perfect example why a specific, express, explicit drug quantity is required. All of the defendants challenged the reliability of these findings. I did a summary of the problems, I think profound problems, in the reply, if you look at those, with these officers' testimony. If you actually read through their testimony, it's a bait-and-switch throughout. The handful of specific instances they give don't provide, remotely provide, a rational basis for extrapolating 139 kilograms in this case. Those challenges were never resolved on appeal because the court of appeal, this court, the court affirmed on an alternative basis of stacking, which didn't, so those challenges were never made, those challenges were never final. There's no reason under the guidelines to consider those guideline application decisions that are set in stone and can't be revisited now. And if the court does revisit, I don't see how the district court can make any specific finding now on this record without committing clear error. And I'd submit on that. Okay. Thank you. Can I ask, can I ask just about the alternative basis for affirmance, relying on Wilson? I read your, I read your very short 28-J response, and it didn't seem terribly persuasive. Maybe you have something to add on that. Well, I'll add that this is an outside the guideline range. Everything is different about this case. Wilson was sentenced after Booker. He had already received a sentence reduction under the first round of amendments. And both of those sentencing, both of those proceedings provided occasions for discussion of the 3553 factors. And then there's Trujillo, which I think controls. Wilson didn't change the law in any relevant respect. Trujillo addresses an explanation that is far more detailed, a 300-page, sorry, 300-word explanation discussing the 3553 factors. And Mendez's showing, his showing of rehabilitation, his discussion of the 3553 factors is far more extended. So for those reasons, I don't think Wilson has anything to say about this case. I hope that was more persuasive, Your Honor. Okay. Thank you, Your Honor.
judges: PAEZ, WATFORD, Bennett